CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
May 01, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HASSAN SHARIF ALI,<br>Petitioner, | ) | |
| | ) | Civil Case No. 7:23-cv-00468 |
| v. | ) | |
| | ) | |
| J.C. STREEVAL,<br>Respondent. | ) | By: Elizabeth K. Dillon<br>United States District Judge |
| | ) | |

**MEMORANDUM OPINION**

Hassan Sharif Ali, a federal inmate proceeding *pro* se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging disciplinary action taken against him while he was incarcerated at the United States Penitentiary (USP) in Lee County, Virginia. (Habeas Pet., Dkt. No. 1.) The respondent moves to dismiss for failure to claim, or in the alternative, for summary judgment. (Dkt. No. 5.) This motion will be granted.

I. BACKGROUND

**A. Introduction**

Petitioner is currently incarcerated at the United States Penitentiary in Lee County, Virginia. Ali challenges the outcome of and proceedings before a Discipline Hearing Officer (DHO) at USP Lee. Specifically, Ali challenges disciplinary action taken against him related to the search of his cell on December 8, 2022. During that search, BOP officer S. Barker discovered two contraband items: (1) a "stinger", which is considered a weapon, and (2) an impermissible quantity of stamps. Ali alleges that he was never advised of his rights throughout the disciplinary process, he was not given an opportunity to present video and documentary evidence, and the Incident Report (IR) was "false, forged, and fabricated." (Dkt. No. 1.)

**B. Inmate Discipline Program**

Pursuant to authority delegated by the United States Congress, the Bureau of Prisons (BOP) has promulgated rules for inmate discipline. *See* 28 C.F.R. § 541. Under these rules, BOP staff prepares an incident report (IR) when they reasonably believe that an inmate has violated a BOP regulation. *See* 28 C.F.R. § 541.5(a). Staff provide the inmate with a written copy of the charges against him, ordinarily within twenty-four hours of the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. § 541.5(a).

An investigating officer informs the inmate of the charges and asks for the inmate's statement concerning the incident. The officer advises the inmate of his right to remain silent, informing him that his silence may be used to draw an adverse inference against him. The officer further explains that the inmate's silence alone may not be used to support a finding that the inmate committed a prohibited act. 28 C.F.R. § 541.5(b).

After the inmate is advised of the charges and his rights, and after the staff investigation is completed, a Unit Disciplinary Committee (UDC) reviews the incident report. 28 C.F.R. § 541.7. The UDC is tasked with reviewing the IR within five working days after it is issued. The inmate is permitted to appear in person or electronically at the UDC review of the IR, except during deliberations, or when the inmate's presence could jeopardize institutional security. The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the UDC review. *See* 28 C.F.R. §§ 541.7(c), (d), (e). After considering all the evidence presented at the review, the UDC makes a decision on the IR. The UDC's decision must be based on some facts, and if there is conflicting evidence, based on the greater weight of the evidence. 28 C.F.R. § 541.7(e).

The UDC finds (1) the inmate committed the prohibited act(s) as charged, and/or a similar prohibited act if reflected in the incident report, (2) the inmate did not commit the prohibited act charged, or (3) refers to the case to the DHO for further proceedings. *See* 28 C.F.R. § 541.7(a)(1)–(3). When an alleged violation of the BOP rules is serious and warrants consideration for other than minor sanctions, the UDC refers the charges to the DHO for further proceedings. 28 C.F.R. § 541.7(a)(4).

When charges are referred to the DHO, the UDC advises the inmate of his rights at the hearing that will occur before the DHO. 28 C.F.R. § 541.7(g). Those rights include having a staff representative and/or witnesses present at the DHO hearing. 28 C.F.R. § 541.8. If the inmate desires, a staff representative will be available to assist the inmate and help the inmate understand the charges and potential consequences. The staff representative may also assist the inmate by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping the inmate prepare evidence for presentation at the DHO hearing. *See* 28 C.F.R. § 541.8.

The DHO considers all evidence presented at the hearing and bases his/her decision on at least some facts, and if there is conflicting evidence, on the greater weight of the evidence. *See id.* The DHO then makes one of the following findings: (1) the inmate committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report, (2) the inmate did not commit the prohibited act charged, or (3) refers the incident back for further investigation, review, and disposition. 28 C.F.R. § 541.8(a).

The DHO also prepares a record of the proceedings, which need not be verbatim. The record documents the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. It also includes the reasons for the sanctions imposed. 28 C.F.R. § 541.8(h).

**C. Incident Report 3706912**

On December 8, 2022, USP Lee staff member S. Barker prepared IR 3706912 charging Ali with Possession of a Dangerous Weapon in violation of BOP disciplinary code 104 and Possession of an Unauthorized Item in violation of BOP disciplinary code 305. (Resp't's Ex. 1, Attachment B, Dkt. No. 8-3.) On December 10, 2022, Barker prepared a re-write of IR 3706912 to correct the time he became aware of the incident; otherwise, the re-write is identical to the original. (*See id.*, Attachment C, Dkt. No. 8-4.) The report provided as follows:

11. Description Of Incident
(Date: 12-08-2022 Time: 0220 hrs staff became aware of incident)

**This is a Re-Write.**
**On 12-8-2022 at approximately 2:20 AM I conducted a cell search of G Unit cell 332 which is housed by inmate Ali, Hassan #30380-057 who is the only occupant of this cell. While searching the cell a prison made striking weapon was discovered. The weapon was made of braided wire attached to two large plumbing nuts. I also found 293 books of stamps in the inmate s socks located in the inmate s commissary bags.**

(*Id.*; *see also* Attachment I, Dkt. No. 8-10 (photographs taken as part of search).) Another staff member, Parsons, provided Ali with a copy of the IR at 0740 on December 11, 2022. (*Id.*, Attachment C, Sections 15–16.) Parsons advised Ali of his rights, and Ali admitted that "it was a stinger." (*Id.*, Sections 23–24.)

Ali's UDC hearing occurred on December 11, 2022. (*Id.*, Sections 17–21.) At the conclusion of the hearing, the UDC referred the charge to the DHO. (*Id.*, Sections 18–20.) The UDC advised Ali of the decision and his right to appeal within 20 calendar days. (*Id.*, Section 18.) Also on December 11, upon referral to the DHO, Ali was provided an Inmate Rights at Discipline form. (Ex. 1, Declaration of Jeffrey Brown ¶¶ 17–20, Dkt. No. 8-1; Attachment D, Dkt. No. 8-5.) He refused to sign the form as indicated by the acronym "RTS". (*Id.*) Ali was also provided with a Notice of Discipline Hearing Before the DHO form, which he also refused

to sign. (*Id.*, Attachment E, Dkt. No. 8-6.) Ali did not ask to call any witnesses or have a staff representative at the hearing. (*Id.*)

Ali's DHO hearing was held on December 14, 2022. (*Id.*, Attachment F, Dkt. No. 8-7.) Ali waived his right to a staff representative and witnesses. (*Id.*, Sections II(A) & III(C); Brown Decl. ¶¶ 22–25.) Ali acknowledged he understood the DHO Report and his due process rights before proceeding. (*Id.*, Section III.) He also acknowledged that he had no issues with the discipline process up to that point. (*Id.*) As evidence, Ali submitted a written statement for the DHO to take into consideration and advised the DHO that he had no further comment. (*Id.*; *see also* Resp't's Ex. 2, Dkt. No. 8-11.) Ali did not present any other evidence and did not request video evidence at any stage of the disciplinary process. (*Id.*; Brown Decl. ¶ 23.)

At the conclusion of the hearing, the DHO found that the greater weight of the evidence supported a finding that Ali committed the prohibited act of conduct which disrupts or interferes with the security or orderly running of the institution, in violation of BOP disciplinary code 199, most like code 104, possession of a dangerous weapon. Additionally, the DHO found that the greater weight of the evidence supported the finding that Ali committed the prohibited act of possession of an unauthorized item, in violation of BOP disciplinary code 305; the DHO decided to change the originally charged code 104 to code 199, most like code 104. (*Id.*, Section V.) In making this finding, the DHO relied upon the reporting officer's statement contained in the IR and the evidence presented, which included a chain of custody log, photographs, and Ali's written statement. (*Id.*, Sections III(D) & V.) The DHO noted:

> The DHO considered your claim the item was a "stinger" during the investigation along with your written statement, wherein you admit ownership of the weapon which had been manufactured from two large plumbing nuts attached to a lanyard made of braided wire and the two hundred and ninety-three books of stamps but claim the manufactured item was not a weapon and that the prohibited act of

Code 104 was only made to place a leverage upon you. You additionally state it is your belief that you should only be charged with possessing unauthorized items. The DHO considered your statements, but found them insufficient to excuse you from the offense. Therefore, the DHO decided the issue giving greater weight to the reporting officer's eyewitness description of the incident, the evidence provided by the institution, and the fact that two large plumbing nuts attached to a lanyard made of braided wire is an instrument which can and has in the past been used by inmates at institution as a weapon. Specifically, Officer Barker states, on December 8, 2022, at approximately 2:20 a.m., he conducted a cell search of G Unit cell 332, of which you were the sole occupant assigned. While searching the cell, a prison made striking weapon was discovered. The weapon was manufactured from braided wire attached to two large plumbing nuts. He additionally discovered 293 books of stamps, concealed in your socks which were located in your commissary bags. You admitted ownership of the items, however, denied the two large plumbing nuts attached to a lanyard made of braided wire as a weapon, but provided no evidence to support your claim other than you say it is so. I could not find any merit in your claim but the statement considered. You did not provide, nor did the DHO find, any credible evidence to identify that Officer Barker had fabricated any part of this incident. He does not have any apparent motive to do so, or vested interest in you one way or the other. On the other hand, you have an obvious motive to be less than candid about the incident to avoid the consequences of your actions. You are responsible for maintaining your assigned area and/or property free and clear of all contraband items. You acknowledged being aware of this responsibility. Being your property, and your alone, made you responsible (CULPABLE) for any contraband items discovered therein. You exercise the most supervision over your cell and personal property on a daily basis, and spend hours at a time in your living area with, and using it. Ultimately being in your possession placed it under your direct dominion and control.

Therefore, because the greater weight of the evidence presented showed that you did in fact possess a dangerous weapon which had been manufactured from two large plumbing nuts attached to a lanyard made of braided wire and the two hundred and ninety-three books of stamps, the DHO concluded that code 305 charge against you in this case was appropriate and warranted. The DHO decided to change the Code 104 charge and finds you committed Code 199, Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution Most Like Code 104, Possession of a Dangerous Weapon of the inmate discipline policy.

(*Id.*, Section V; Brown Decl. ¶¶ 28–33.)

For the violation of Code 199, the DHO sanctioned Ali with the disallowance of 41 days of Good Conduct Time (GCT), 15 days of disciplinary segregation, and 180 days of loss of e-mail privileges. (*Id.*, Section VI.) For the violation of Code 305, the DHO sanctioned Ali with the disallowance of 14 days of GCT, forfeiture of 7 days of nonvested GCT, and 180 days loss of commissary privileges. (*Id.*) These sanctions were imposed for the following reasons:

VII. REASON FOR SANCTION OR ACTION TAKEN

The action/behavior on the part of any inmate to have possession of anything which is not authorized interferes with the staff s ability to account for all inmate property and perform proper shakedowns of the inmate s assigned area. Unauthorized items can be used for illegal purposes, drugs and/or intoxicants and, therefore, cannot and will not be tolerated. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior. Additionally, this action or behavior on the part of any inmate to use or possess any instrument as a weapon, not only disrupts the security and orderly operation of the institution, but creates the potential for violence and-or leads to the possibility of a larger disturbance to occur. In the past, incidents such as this have led to serious bodily injuries of others and have escalated to include many factions throughout the institution. The DHO expects these sanctions will serve to deter you from similar misconduct in the future and convince you to abide by all institution rules and regulations.

(*Id.*, Section VII.) Ali was advised of his right to appeal and provided a copy of the DHO report on March 27, 2023. (*Id.*, Sections VIII & IX.) Ali filed an appeal on March 30, 2023. (*See* Dkt. No. 1-1.)

## II. ANALYSIS

### A. Summary Judgment[1]

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

[1] Because the court has considered evidence outside of the pleadings, the court will address this matter as a motion for summary judgment.

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The submissions of *pro se* litigants are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**B. Petitioner's Claims**

As noted, petitioner claims he was denied due process because: (1) he was never advised of his rights throughout the disciplinary process; (2) he was not afforded an opportunity to

present video or documentary evidence; and (3) the IR was "false, forged, and fabricated." (*See* Habeas Pet.) Ali asks the court to order staff at USP Lee "not to retaliate against [him] for this action in any . . . fashion and for the incident report be expunged." (*Id.*)

**C. Due Process**

In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. The Supreme Court has identified the following due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if illiterate or the hearing involves a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him throughout the disciplinary process; and (5) the decision-maker must be impartial. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). In these proceedings, there is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. *See Brown v. Braxton*, 373 F.3d 501, 504–05 (4th Cir. 2004).

A prison disciplinary decision comports with the requirements of due process if "some evidence" supports the decision by the prison disciplinary board. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Mahammend v. Green*, Civil Action No. JKB-23-1338, 2023 WL 8777805, at *3 (D. Md. Dec. 19, 2023). The findings will only be disturbed

when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 457; *Tyler v. Hooks*, 945 F.3d 159, 171–72 (4th Cir. 2019).

Petitioner first argues he was not advised of his rights during the incident report procedure or process. This is factually incorrect, as petitioner was advised of his rights on several occasions. For example, petitioner was provided a copy of the IR on December 11, 2022, and "was advised of his rights at that time" and stated that he "understood his rights" while admitting that he possessed the "stinger." (Brown Decl. ¶¶ 9–11; Ex. 1, Attachment C, Sections 12–17, 23–24.) Prior to the DHO hearing, Ali was presented with a form explaining that he had an opportunity to request a staff representative, witnesses, and present documentary evidence, all of which he declined. (Ex. 1, Attachment E.) And at the DHO hearing on December 14, Ali was again advised of his rights before the hearing commenced. (Ex. 1, Attachment F, Section III(B).) Petitioner has not created an issue of fact on this point.[2]

Petitioner next argues that he was not given a fair opportunity to present and have considered video surveillance and documentary evidence. (Habeas Pet. 7.) To the contrary, Ali did present evidence, including his written statement, and he did not seek or request any video evidence at or before the hearing. (Ex. 2, Ali Written Statement; Ex. 1, Attachment F, Sections III(B), III(D), V; Brown Decl. ¶ 23.) As it pertains to video evidence, the Fourth Circuit has held that when considering "the right to have video surveillance evidence considered in disciplinary proceedings—upon an inmate's request, the disciplinary hearing officer must review video surveillance unless the government establishes that consideration of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or

[2] Petitioner argues that the court should disregard the evidence provided by the respondent, particularly the Brown Declaration, because Brown did not himself advise him of his rights. (Dkt. No. 11.) Brown can attest as to whether others advised petitioner of his rights, and in any event, there is additional evidence in the record to demonstrate advisement of rights.

correctional goals.'" *Lennear v. Wilson*, 937 F.3d 257, 272 (4th Cir. 2019) (quoting *Wolff*, 418 U.S. at 566). Petitioner claims that he orally requested video evidence at his DHO hearing (Dkt. No. 11 at 2),[3] but the written statement submitted by Ali as evidence at his disciplinary hearing makes no mention of video evidence. (Ex. 2; Ex. 1, Attachment F, Section V.) Ali mentioned the issue of video surveillance evidence at the administrative remedy stage (Dkt. No. 1-1 at 1), but under *Linnear*, this was too late to request a review of video surveillance. Moreover, in his statement, Ali denied that the item was a weapon, but admitted that it was "unauthorized contraband." (Ex. 2.) This statement, whether Ali regards the item as a weapon or not, contradicts his later statement that the video footage would show that "no officer had discovered the so called striking weapon during the search of my cell." (Dkt. No. 1-1 at 1.)

Ali also argues that he attempted to introduce two other exhibits for the DHO hearing and on appeal that were not considered. (Dkt. No. 1-2, Exs. A, B.) Exhibit A is an unsigned "Inmate Personal Property Record" dated December 12, 2022, reflecting that Ali possessed "970 Flat Books stamps" labelled "C" for "Contraband." (Dkt. No. 1-2 at 2.) Exhibit B is an Inmate Request to Staff form dated January 2, 2023, asking about "970 Flat Books of stamps that was confiscated from my cell on Dec. 8 of last year." (*Id.* at 4.) It also contains a response from USP Lee staff on January 13, 2023, stating that "all contrabands were discard [*sic*] and will not be given back." (*Id.*)

Ali asserts that these documents show that USP Lee staff falsified the IR by stating only 293 books of stamps were confiscated. Exhibit B, however, is dated January 2, 2023, two weeks

---

[3] Even though Ali makes this statement as a declaration under penalty of perjury, it is insufficient to create an issue of fact precluding summary judgment. *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) ("Airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment."); *see also Jones v. Stamper*, No. 1:12cv352 (AJT/IDD), 2013 WL 6448847, at *2 n.2 (E.D. Va. Dec. 6, 2013) (explaining that a *pro se* prisoner's sworn pleading or brief with a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity").

after the DHO hearing was held, so it could not have been submitted at the hearing. Exhibit A is an unsigned, unofficial document using an outdated form that is no longer used by USP Lee or the BOP to inventory an inmate's possessions. The form currently used is reflected in the exhibits provided by respondent. (Brown Decl. ¶¶ 30–32; Ex. 1, Attachment G, Property Forms.) USP Lee staff catalogued five such forms reflecting the contents of Ali's personal property on December 8, 2022. On December 12, 2022, Ali signed off on the accuracy of these forms before transferring to the SHU that same day. On December 29, 2022, when Ali was released from the SHU, he once again signed the property forms confirming the entirety of his property was returned to him as was catalogued on December 8, 2022:

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify it's accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS:

Printed Name/Signature of Receiving Officer: [signature] Date: 12/12/22 Time: 7:05am

I have today reviewed the property returned to me. [signature] 30380-057 12/12/22
Signature of Inmate Register # Date Time

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS:

Printed Name/Signature of Receiving Officer: [signature] Date: 12/29/22 Time: 9:25am

I have today reviewed the property returned to me. [signature] 30380-057 12/29/22 9:25am
Signature of Inmate Register # Date Time

Original: Central File; Copy: Inmate, R&D, Special Housing
(This form may be replicated by WP)

Replaces of BP-S383 of AUG 94

USP LVN

(*Id.*) Also, confiscated items are not listed on the inmate's personal property form because he no longer possesses those items. (Brown Decl. ¶ 32.) Instead, confiscated or contraband items are recorded on a Chain of Custody Log when they are seized. (*Id.*; *see also* Exhibit 1, Attachment H, Chain of Custody Logs.) Here, Ali's 293 books of stamps were recorded on a Chain of Custody Log form by USP Lee staff member Barker and were deposited in the overnight drop box by Lt. Turner on December 8, 2022, as witnessed by USP Lee staff member Sessar:

BP-A0971 CHAIN OF CUSTODY LOG CDFRM
AUG 11
U.S. DEPARTMENT OF JUSTICE FEDERAL BUREAU OF PRISONS

ECN # ______
ITEM # ______ (Enclose with/attach to evidence)
CASE ID NUMBER: ______ SUSPECT (If known) Ali Hassan # 30880-057
DESCRIPTION OF ITEM: 293 books of stamps
DATE/TIME ITEM FOUND: 12-8-22 235 Am Stamps
LOCATION: Cell 332
SIGNATURE OF PERSON RECOVERING EVIDENCE: [signature]
PRINTED NAME: Barker
EVIDENCE PLACED IN OVERNIGHT DROP BOX:
DROP-BOX BY: (printed name) Turner
Date & Time: 12-8-22 525am
Witness: (printed name) Sessor

(*Id.*) Thus, the IR was not falsified, the disciplinary ruling is supported by the evidence in the record, and there was no due process violation.

Finally, petitioner argues that the IR is "false, forged and fabricated." (Habeas Pet. 7.) This argument is contradicted by Ali's written statement that he submitted as evidence, in which Ali admits to possessing the stinger and a prohibited number of stamps.

**Your written statement is as follows: The incident report does not comply with regulation on inmate discipline. Officer found an unauthorized amount of stamps in my cell. He told me if I donate the stamps I "Will not receive a shot." But if I want a confiscation sheet, I will. Since I did not want to donate the stamps, I received this incident report for: Possessing a dangerous weapon, and unauthorized item. The item described as a weapon in the report is in fact NOT a weapon. That description and prohibited act was made to place a leverage upon me. Truth is, I only had unauthorized contraband (Most like 305) in my cell. I have kept a clear conduct since I have been here and always plan on keeping it that way. Foolish incident report like this and my mistake can end up affecting my privilages and pending compassionate release court proceeding. I would respectfully ask that you allow me to enter into an informal resolution. I want to donate the stamps because I want to maintain my current status of clear conduct. Please and Thank you**

(Ex. 2.) Here, Ali states that the officer "found an unauthorized amount of stamps in my cell." (*Id.*) And as explained above, Ali does not deny that the stinger item was also found in his cell. (*See id.*) Even aside from all the other evidence, Ali's admissions satisfy the "some evidence" standard to satisfy due process.

For these reasons, the court will grant the motion for summary judgment on Ali's due process claims.

## III. CONCLUSION

For the foregoing reasons, the court will issue an appropriate order granting respondent's motion for summary judgment and dismissing this matter with prejudice.

Entered: May 1, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge